UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTINE WARREN,

       Plaintiff,

                                      File No. 2:12-CV-13

v.

                                       HON. ROBERT HOLMES BELL

PRISON HEALTH SERVICES, INC.,
et al.,

       Defendants.

_____/

## O P I N I O N

       This matter is before the Court on Defendants Prisoner Health Services, Inc. ("PHS"), Jeffrey Bomber, D.O., and Adam Edelman, M.D.'s, motion to dismiss Counts III and V of Plaintiff Christine Warren's second amended complaint. (Dkt. No. 60.)  On January 10, 2012, Plaintiff filed her first complaint asserting gross negligence against Gary Freytag, R.N., Lisa Shilling, R.N., Cathy Pope, R.N., Donna Quinlan, R.N., James Carne, L.P.N., David Kihm, R.N. (collectively, the "Nurse Defendants"), Mitch Perry, PHS, Bomber, and Edelman, and constitutional deprivations under 42 U.S.C. § 1983 against all individual defendants.  (Dkt. No. 1.)  Plaintiff first amended her complaint on February 21, 2012, adding a claim under 42 U.S.C. § 1983 against PHS.  (Dkt. No. 17.)  Plaintiff's second amended complaint was filed on July 16, 2012, adding a claim of medical malpractice against all defendants except Perry.  (Dkt. No. 56.)  PHS, Bomber, and Edelman moved to dismiss Counts III and V as they pertained to them on July 23, 2012.  (Dkt. No. 60.)  For the reasons

that follow this motion will be granted in part and denied in part.

## I.

Plaintiff is the personal representative of the Estate of Carnell Warren ("decedent"). She alleges that the decedent was an inmate of the Michigan Department of Corrections ("MDOC") and that PHS was the entity responsible for providing health care to MDOC inmates during the time frame in question. During this time, decedent developed cardiac concerns. Two weeks before his death, decedent complained of chest pains, and defendants were aware of this. (Dkt. No. 56, ¶ 23.) Following these complaints, Bomber requested a cardiac stress test (*Id.* at ¶ 27), but this request was rejected by Edelman on January 21, 2010 (*Id.* at ¶ 31). On January 27, a cardiac stress test was scheduled for February 2, 2010. (*Id.* at ¶ 33.) However, over the next four days, decedent's condition deteriorated, and he died on January 31, 2010. (*Id.* at ¶¶ 34-43.)

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. "[T]o survive a motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). In reviewing such a motion, the Court must "accept all of plaintiff's factual allegations as true." *G.M. Eng'rs and Assoc., Inc. v. W. Bloomfield*

*Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As a general rule, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903.

According to the Supreme Court, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 545 (2007) (internal quotations omitted). While detailed factual allegations are not required, the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III.

#### A. Count III

Defendants PHS, Bomber, and Edelman move to dismiss Count III of the second amended complaint as it pertains to them because it fails to state any legally cognizable claim for gross negligence under state law. (Dkt. No. 60, at 3-5.) This count alleges that Bomber, Edelman, PHS, and the other defendants exhibited conduct so reckless as to demonstrate a substantial lack of concern for decedent. (Dkt. No. 56, ¶ 62.) Defendants assert that this

claim is properly brought as a medical malpractice claim and cannot be brought as a gross negligence claim against these defendants. Defendants are correct.

Michigan law establishes that "[t]he key to a medical malpractice claim is whether it is alleged that the negligence occurred within the course of a professional relationship." *Bronson v. Sisters of Mercy Health Corp.,* 438 N.W.2d 276, 279 (Mich. Ct. App. 1989). "[A] complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence." *McLeod v. Plymouth Court Nursing Home*, 957 F. Supp. 113, 115 (E.D. Mich. 1997). "The determination whether a claim will be held to the standards of proof and procedural requirements of a medical malpractice claim as opposed to an ordinary negligence claim depends on whether the facts allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment." *Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 465 (Mich. 1999). The test is as follows:

> [A] court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.

*Bryant v. Oakpointe Villa Nursing Centre*, 684 N.W.2d 864, 871 (Mich. 2004).

Plaintiff attempts to distinguish this law on the ground that these cases do not establish the non-viability of a gross negligence cause of action directed against *private* parties. (Dkt.

4

No. 66, at 11.) But the test does not distinguish between claims against private parties and those against government employees. The test focuses on whether the underlying facts concern questions of medical judgment. The answer to that question does not turn on whether the party being sued is a government employee. For example, the Eastern District of Michigan dismissed a state law gross negligence claim asserted against a private company which contracted to provide medical services (and one of its employees) because "Plaintiff's gross negligence claims against [the private defendants] sound in medical malpractice." *Fisher v. Cty. of Macomb*, No. 2:08-CV-13844, 2011 WL 2414413, at *14 (E.D. Mich. June 14, 2011). *See also Hagopian v. Smith*, No. 05-CV-74025-DT, 2008 WL 3539251, at *5 (E.D. Mich. Jan. 31, 2008) (denying private defendants' motion to dismiss plaintiff's common law gross negligence claim because the *Dorris* factors not satisfied); *Smit v. Meyer*, No. 1:09-CV-213, 2010 WL 4365517 (W.D. Mich. Oct. 27, 2010) (Carmody, J.) ("The Court concludes, therefore, that Plaintiff's state law [gross] negligence claim against [privately employed defendant nurse] is properly characterized as a medical malpractice claim.").

Thus, the *Bryant* factors must be applied to determine whether Plaintiff's claim must be brought as a medical malpractice claim. The first factor is satisfied because Plaintiff's claims pertain to actions taken by Bomber and Edelman that occurred within their professional capacity as doctors caring for decedent. Additionally, Plaintiff's claims against PHS only concern the extent it participated in this professional relationship through its supervision of Bomber and Edelman. As for the second factor, the claim raises questions of

5

medical judgment beyond the realm of common knowledge and experience. The entire claim centers on medical treatment and care decisions. For example, the complaint alleges a failure to timely recognize cardiac problems and a failure to obtain an urgent stress test. (Dkt. No. 56, ¶ 63.) Because both factors are met, the allegations in Count III of Plaintiff's complaint concerning Bomber, Edelman, and PHS must be brought under a medical malpractice claim. Consequently, Count III of Plaintiff's complaint will be dismissed as it pertains to Bomber, Edelman, and PHS.

Plaintiff also asserts Count III against the Nurse Defendants. These defendants have not filed a motion to dismiss this claim. However, Count III makes the same allegations against these nurses as it did Bomber, Edelman, and PHS. Namely, every example of grossly negligent behavior listed involved treatment decisions and medical judgment. (*Id.*) Consequently, the *Bryant* test is satisfied as to these defendants. Accordingly, the Court will dismiss Count III as it pertains to these defendants as well, meaning Count III will be dismissed in its entirety.

## B. Count V

PHS also disputes the sufficiency of the allegations in Count V to state a claim. (Dkt. No. 60, at 6-10.) Plaintiff alleges in Count V that PHS is liable under 42 U.S.C. § 1983 for its "unconstitutional customs, policies, practices or procedures" which "caused the individual Defendants to be deliberately indifferent" to decedent's serious medical needs. (Dkt. No. 56, ¶ 73.) Plaintiff is relying on the theory of liability for municipal corporations laid out in

6

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). This theory has been extended to private corporations acting under color of state law as well. *See, e.g.*, *Street v. Corr. Corp. Of Am.*, 102 F.3d 810 (6th Cir. 1996).

"[T]o satisfy the *Monell* requirements a Plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)). While Plaintiff is correct to point out that *Garner* and *Coogan* were not 12(b)(6) decisions, the standard is similar under 12(b)(6): "To successfully plead an official capacity claim against a municipal employee or entity, a plaintiff must (i) identify a municipal policy or custom; (ii) connect that policy or custom to the municipality; and (iii) show that execution of that policy or custom caused the particular injury." *Denton v. Bedinghaus*, 40 F. App'x 974, 977 (6th Cir. 2002). However, some Sixth Circuit precedent retreats from the strict requirement to identify a particular policy:

> To set forth a cognizable § 1983 claim against a municipality, a plaintiff must allege that (1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation.

*Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)).

Adding to the confusion, some district court opinions in this circuit understand *Twombly* and *Iqbal* to require the pleading of specific facts to support an allegation that a

7

custom or policy is in place:

> Thus this Court understands *Twombly* and *Iqbal* as requiring Plaintiff to allege some facts in his Complaint to support his conclusory allegation that [the municipality] "fail[s] to adequately train and/or supervise its police officers." (See Compl. ¶ 34.) Plaintiff cannot allege a municipal liability claim hoping that discovery will reveal facts to support the claim. A lawsuit is not a fishing expedition for a plaintiff to discover a claim against the defendant.

*Curney v. City of Highland Park*, No. 11–12083, 2012 WL 1079473, at *5 (E.D. Mich. Mar. 30, 2012). *See also Johnson v. Gannon*, No. 3:09-0551, 2010 WL 1658616, at *4 (M.D. Tenn. Apr. 23, 2010) (quoting *Cuevas v. City of N.Y.*, 2009 WL 4773033, at *4 (S.D.N.Y. 2009)) ("'Baldly asserting that Plaintiff's injuries are the result of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right' and in such cases, a failure to train claim against a city must be dismissed."). Others, including this Court, have held that even after *Twombly* and *Iqbal*, at the pleading stage a plaintiff does not have to do anything other than "to raise a plausible inference that officers were acting pursuant to municipal custom or policy." *Modd v. City of Ottawa*, No. 1:10–CV–337, 2011 WL 710679, at *2 (W.D. Mich. Feb. 23, 2011) (Bell, J.).

PHS contends that Plaintiff is attempting to embark on a fishing expedition through discovery, and this Court agrees. However, it recognizes the reality that Plaintiff is in a poor position to know the exact contours of PHS's customs and policies without the aid of discovery. Additionally, it recognizes the minimal burden placed on Plaintiff at this early stage in the litigation. Plaintiff's pleadings must be put forth with enough specificity to put PHS on notice of the nature of the claim. Following *Iqbal* and *Twombly*, the pleadings must

also state a claim to relief that is plausible on its face.  The Court finds that PHS has been sufficiently put on notice, and Plaintiff's pleadings state a claim that is plausible.

Plaintiff has alleged that PHS was acting under color of state law.  (Dkt. No. 56, ¶ 71.) Further, Plaintiff pleaded that the unconstitutional policies and customs of PHS proximately caused the violation of decedent's constitutional rights.  (*Id.* at ¶¶ 72-74.)  Thus, Plaintiff has pleaded facts sufficient to satisfy the requirements set forth in *City of Memphis*.  To the extent that Plaintiff is required to plead a specific policy or custom, as discussed in *Garner* and *Denton*, the Court finds that Plaintiff has met her burden, albeit barely.  Plaintiff does attempt to define specific customs and policies, specifying PHS's alleged failure to adequately supervise the individual defendants and its alleged failure to adopt policies that would prevent its employees from being deliberately indifferent.  (*Id.* at ¶ 72.)  These pleadings, while on the brink of being conclusory, do set forth a claim to relief that is plausible.  It is plausible that PHS knew of its employees' allegedly unconstitutional actions yet failed to act by providing reasonable or adequate supervision.[1]  Additionally, it is plausible that PHS's policies or failure to adopt policies proximately caused the alleged

---

[1]PHS contends that a failure to supervise claim requires an allegation that the defendant either encouraged the specific incident or directly participated.  (Dkt. No. 71, at 9 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).)  First, *Shehee* involved summary judgment and did not discuss the pleading requirements.  Second, *Shehee* also provided that "[a]t a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Id.*  It is plausible, based on the pleadings, that Plaintiff will be able to show after discovery that PHS's policies or customs are properly considered an implicit authorization of or knowing acquiescence in the allegedly unconstitutional behavior of the employees.

deliberate indifference of the employees. Thus, Plaintiff has pleaded sufficient facts in Count V to survive the 12(b)(6) motion.

## IV.

A plaintiff may not bring a negligence cause of action when the facts alleged give rise to a medical malpractice claim. Here, Plaintiff's allegations in Count III regard actions that occurred during the course of professional medical relationships and raise questions of medical judgment. Thus, they may only be raised as part of a medical malpractice claim, which Plaintiff has done in Count VI. As for Count V, accepting all of Plaintiff's factual allegations as true, Plaintiff has stated a plausible claim to relief. While the minimal nature of the pleadings leaves much to be desired, Plaintiff's burden at this stage is light. Accordingly, the Court will grant the motion to dismiss as to Count III and deny it as to Count V. It will also dismiss Count III as it pertains to the Nurse Defendants.

An order consistent with this opinion will be entered.


Dated: October 16, 2012                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE