UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTINE WARREN, as Personal
Representative for the Estate of
CARNELL WARREN, deceased,

       Plaintiff,

v.

PRISON HEALTH SERVICES, INC.,
et al.,

       Defendants.
                                      /

File No. 2:12-CV-13

HON. ROBERT HOLMES BELL

## **O P I N I O N**

       This is a prisoner civil rights and medical malpractice case brought pursuant to 42 U.S.C. § 1983 and Michigan common law. This matter is before the Court on Defendants Prison Health Services (PHS), Bomber, and Edelman's Motion for Summary Judgment (Dkt. No. 118) and Defendants Freytag, Shilling, Pope, and Kihm's concurrent Motion for Summary Judgment (Dkt. No. 130). Plaintiff has filed Responses to each Motion (Dkt. Nos. 137 and 139, respectively) to which Defendants have filed Replies (Dkt. Nos. 149 and 150, respectively).

       At issue is whether any of the defendants evinced the necessary "deliberate indifference" to Plaintiff's serious medical condition so as to incur liability under the Cruel and Unusual Punishments clause of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Given the breadth and depth of the written briefs and evidence cited, the Court holds oral argument is unnecessary for the disposition of the motions. *See* W.D. Mich. LCivR 7.2(d); *see also Himes v. United States*, 645 F.3d 771, 784 (6th Cir. 2011). Having fully considered the arguments presented, the Court grants-in-part and denies-as-moot-in-part Defendants' motions. Also before the Court is Defendant PHS, Bomber,

and Edelman's Motion to Strike Plaintiff's Expert (Dkt. No. 140) and Motion for Leave to File a Reply (Dkt. No. 145). For the reasons that follow, Defendants' motions are denied-as-moot.

## I. BACKGROUND

Plaintiff is the widow and representative of the estate of the deceased, Carnell Warren[1] (2nd. Am. Compl., Dkt. No. 56 at 2). At the time of his death, Mr. Warren was a prisoner at Newberry Correctional Facility (*id.* ¶ 20). Plaintiff's decedent (Decedent) died on January 31, 2010, allegedly of a heart attack (*id.* ¶ 45).

On Saturday, January 16, 2010, Decedent submitted a "kite" to prison officials (Ex. A, Dkt. No. 131-2 at 3). Decedent complained that he was experiencing chest pain that made it feel like he was about to have a heart attack (*id.*). Decedent thought the pain was related to his diabetes medication (*id.*). Defendant Shilling (a nurse) responded to the kite by calling Decedent on the prison telephone (*id.*). Decedent denied presently experiencing chest pain and reported that the pain came on when he walked to class (*id.*). Decedent indicated had not previously reported his pain to prison healthcare officials (*id.*). Defendant Shilling instructed Decedent to call for evaluation if the pain recurred, and Decedent acknowledged this instruction (*id.*).

Defendant Shilling scheduled a doctor's appointment for Decedent for "on or about" Tuesday, January 19. Defendant Shilling noted in her evaluation that the urgency of Decedent's condition was "routine" (*id.*).

On Sunday, January 17, Decedent called the prison health care unit and spoke to Defendant Freytag (a nurse), complaining that he had experienced temporary chest pain again (Dep. of Freytag,

---

[1] In compliance with Fed. R. Civ. P. 56, all facts are construed in the light most favorable to the Plaintiff.

Dkt. No. 131-4 at 5). Defendant Freytag instructed Decedent to come to the health care unit for evaluation (*id.*). When he realized there was no doctor to evaluate him, Decedent refused to be evaluated by Defendant Freytag (*id.*). Defendant Freytag avers that Decedent appeared normal (*id.*). Decedent reported to Defendant Freytag that his pain went away with rest (Ex. A, Dkt. No. 131-2 at 4).

On Monday, January 18, Defendant Bomber (a physician) evaluated Decedent (*id.* at 6). Decedent reported "mid-chest pain that is associated with exertion" that was relieved by rest (*id.*). Decedent also reported sweating and shortness of breath during his episodes of pain (*id.*). Decedent denied that the pain radiated to the left arm and jaw (*id.*). Defendant Bomber assessed Decedent as exhibiting symptoms of "true angina" and submitted a request for a "Cardiolite Cardiac Stress Test" (*id.*). The request was sent to Defendant Edelman (a physician) for evaluation on January 20 (Mot. Summ. J., Dkt. No. 118 at 15).

On Tuesday, January 19, Defendant Bomber ordered an EKG test (Ex. A, Dkt. No. 131-2 at 7), which was performed by Defendant Freytag on Wednesday, January 20 (*id.*). At the time Defendant Freytag performed the EKG, Decedent did not report experiencing chest pain (Def.'s Br., Dkt. No. 131 at 15).

On Thursday, January 21, Defendant Edelman responded to Defendant Bomber's request, denying a "Cardiolite Cardiac Stress Test" as necessary and directing Defendant Bomber to submit another request for a either "a standard stress test if patient can exercise, or a dobutamine stress echo if he cannot" (Ex. A, Dkt. No.131-2 at 10).

On Wednesday, January 27, Defendant Kihm (a nurse) learned during a phone call with Plaintiff that Decedent had not been given his stress test (Def.'s Br., Dkt. No. 131 at 16). Defendant

Kim immediately began to work with Defendant Bomber to schedule a stress test for that same day (*id.*). One was scheduled for 3 p.m., but no one qualified to perform one was available at the hospital (Def.'s Br., Dkt. No. 118 at 16). The test was rescheduled for February 2 (*id.*).

On Thursday, January 28, Decedent came to the prison heathcare unit for a blood draw (Def.'s Br., Dkt. No. 131 at 7). While there, he complained to Defendant Pope (a nurse) of chest pain earlier that morning while walking, but that the pain abated with rest (*id.*). Defendant Pope immediately did an evaluation and took Decedent's vital signs (*id.*). Defendant Kihm, who was present, and Defendant Pope, both observed that Decedent appeared not to be in distress at the time of his visit (*id.*). Defendant Pope contacted a prison doctor, Dr. Burtch, to discuss Decedent's complaints. Dr. Burtch ordered nitroglycerin but did not order Defendant Pope to send Decedent to the emergency room (*id.*).

On Friday, January 29, Decedent returned to the prison healthcare unit, complaining to Defendant Shilling that he had chest pain when he woke up. Decedent reported that he had been given an EKG, that he was given nitroglycerin, but had not taken it, and that he was scheduled for a stress test the next week (*id.*).

Defendant Shilling evaluated Decedent, noting a slightly elevated blood pressure, but otherwise his evaluation was normal (*id.*). Defendant Shilling arranged for Decedent to be seen by a doctor later that day (*id.*).

Defendant Bomber saw Decedent the same day, but because the medical records computer system was down, was unaware that Decedent had seen Defendant Shilling and Defendant Pope in the previous days (Def. Br., Dkt. No. 131 at 18). Defendant Bomber noted that Decedent was refusing to take insulin, but that the nitroglycerin was helping with his pain, and that he had elevated

4

blood pressure (*id.* at 19). Decedent did not advise Defendant Bomber that he had seen anyone else that day or that he had woken with chest pains (*id.*).

Decedent suffered a heart attack and died on Sunday, January 31 (2nd. Am. Compl., Dkt. No. 56 at ¶ 45).

### III. LEGAL STANDARDS

A.   *Summary Judgment*

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

B.   *Cruel and Unusual Punishment Clause of the Eighth Amendment*[2]

---

[2]Although under 42 U.S.C. § 1983 a plaintiff must prove that a defendant was a state actor at the time of the alleged constitutional deprivation, none of the Defendants in the present
(continued...)

A claim under the Eighth Amendment comprises an objective and subjective component: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). For a medical claim, a prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 102, 104-05 (1976). Thus, to prevail on a medical claim of Cruel and Unusual Punishment, a plaintiff must show an objectively serious medical need and prove that the defendant was subjectively "deliberately indifferent" to that need. *Id.*

In order for a prison official to evince a "deliberately indifferent" state of mind, the official must "know[] of and disregard[] an excessive risk to inmate health." *Farmer*, 511 U.S. at 837. It is not sufficient that an official *should have* known that an excessive risk of harm existed. *Id.* at 838. The official must know of facts from which an inference can be drawn there exists an excessive risk of harm, and must also draw the inference. *Id.* at 837. This state of mind requires something more than negligence. *Estelle*, 429 U.S. at 106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976). Despite this reluctance, the Sixth Circuit has adopted a "grossly inadequate" standard for evaluating medical mistreatment cases under the Eighth Amendment where some care was given.

---

[2](...continued)
case have raised this as a defense. Therefore, for the purposes of resolving these motions, all Defendants are assumed to have been state actors.

*Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th. Cir. 2002). Grossly inadequate medical treatment is care that is "'so grossly inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (quoting *Waldorp v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). The relevant inquiry as to whether a defendant provided grossly inadequate care is "whether a reasonable [medical provider] . . . could have concluded his actions were lawful." *Waldorp*, 871 F.2d at 1034. This approach comports with the Supreme Court's holding in *Farmer* that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

In a case with multiple defendants, the subjective prong of the test must be evaluated individually for each defendant. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th. Cir. 2005). Further, liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th. Cir. 1991). Therefore each Defendant in this case will be evaluated individually.

### III.  ANALYSIS

Throughout her Briefs in Response, Plaintiff argues that the facts of this case are analogous to those in *Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005). Because Plaintiff's argument is applied to each Defendant, and is equally with out merit with regard to each Defendant, this argument is addressed at the outset.

In *Carter*, the decedent was arrested and booked around noon. 408 F.3d at 307. Almost immediately, she began to complain of chest pain and indicated she had not taken her "heart"

medication. *Id.* Other detainees testified that the decedent cried loudly for help throughout the afternoon. *Id.* An officer the decedent had informed of her chest pains left for the afternoon without telling the officer relieving him about the decedent's condition. *Id.* It was not until 4:10 p.m. that an officer called for a car to take the decedent to the hospital. *Id.* at 408. By 5:00 p.m. the decedent was collapsed in her cell and later pronounced dead on arrival at the hospital. *Id.* The Sixth Circuit held that there was sufficient evidence to create a triable issue of fact on whether the officers in question had been deliberately indifferent to the decedent's serious medical condition. *Id.* at 313-14.

Plaintiff argues that *Carter* is analogous to this case because all of the Defendants were aware of Decedent's chest pains, yet did not rush him to the emergency room. Defendants argue correctly that *Carter* is distinguishable. First, the decedent in *Carter* complained of *present* chest pains to all of the defendants and was *presently* in distress, as evidenced by the other detainees' testimony that she was crying loudly for help. Here, Decedent only ever complained of *past* chest pain. Also, according to various Defendants' uncontroverted testimony, Decedent never appeared to be in distress when he sought treatment. Second, while the decedent in *Carter* was not given any medical treatment until it was too late, Decedent was treated in multiple ways, including physical evaluation, an EKG, nitroglycerin, and a scheduled stress test.

Therefore, because the facts of *Carter* and the present case are markedly different, *Carter*'s conclusion that a triable issue of fact existed does not control, and Plaintiff's argument that *Carter* does control is without merit.

A. *Defendants PHS, Bomber, and Edelman*

Defendants PHS, Bomber, and Edelman have moved for summary judgment with respect to Plaintiff's Eighth Amendment claims because none of them evinced a sufficiently culpable state of

mind under *Estelle* and *Farmer*. Because this motion can be decided solely on the basis of the subjective prong of the *Farmer* test, the objective prong is not discussed. For the reasons that follow, Defendants PHS, Bomber, and Edelman's motion is granted with respect to Plaintiff's Eighth Amendment claims.

1. <u>Defendant PHS</u>

Plaintiff does not dispute that no federal constitutional claim exists against Defendant PHS (Pl.'s Resp., Dkt. No. 137 at 4). Therefore, because no evidence exists from which a reasonable jury could return a verdict in favor of Plaintiff with regard to Plaintiff's Eighth Amendment claim against Defendant PHS, Defendant PHS's motion is granted with regard to Count V.

2. <u>Defendant Bomber</u>

Defendant Bomber argues that summary judgment with regard to Plaintiff's Eighth Amendment claim is warranted because he provided "appropriate" treatment to Decedent in his interactions with him (i.e., conducting an EKG) (Def. Br., Dkt. No. 119 at 24), and because Defendant Bomber took necessary steps to schedule Decedent's stress test (*id.* at 25). Plaintiff argues that once Decedent reported on January 18 that he had experienced chest pains while walking that were relived by rest, Defendant Bomber should have immediately sent Decedent to the emergency room, and that his failure to do so showed deliberate indifference to Decedent's health and safety. Plaintiff bases this argument on the testimony of her expert, Dr. Stark, who stated that a patient "has to be sent to the emergency room for evaluation" if the patient has experienced chest pain in the past (Dep. of Stark, Dkt. No. 119-4 at 23). Plaintiff also asserts that prison policy was to treat chest pain as an "emergent, life-threatening condition" (Pl.'s Resp., Dkt. No. 137 at 7). Plaintiff argues that Defendant Bomber's failure to send Decedent to the emergency room (allegedly in violation of

9

prison policy) evinces a deliberate indifference to Decedent's medical needs. Finally, Plaintiff argues that when Defendant Bomber saw Decedent on January 29, Defendant Bomber's failure to learn that Decedent had reported chest pain at rest to Defendant Shilling is evidence that Defendant Bomber "'refused to verify underlying facts that he strongly suspected to be true or declined to confirm inferences of risks that he strongly expected to exist.'"(*id.* at 8) (quoting *Farmer*, 511 U.S. at 843 n. 8).

Plaintiff's arguments are unpersuasive. First, assuming for the purpose of this motion that Dr. Bomber violated a prison policy by not classifying "chest pain *standing alone* as an emergent, life-threatening condition" (Pl.'s Resp., Dkt. No. 137 at 7) (emphasis in original), and therefore sending Decedent to the emergency room, such a violation does not defeat Defendants' motion. Whether a prison official violated a prison policy "is not determinative of whether he violated the Eighth Amendment." *Runkle v. Kemen*, ___ Fed. App'x ___, 2013 WL 2249462, at *6 (May 23, 2013). Therefore Plaintiff's assertion that Defendant Bomber violated prison policy, taken as true, is insufficient for Eighth Amendment liability to attach.

Second, "a disagreement between medical personnel over the appropriate course of treatment is insufficient to establish an Eighth Amendment claim." *Runkle*, 2013 WL 2249462, at *5 (May 23, 2013) (quoting *Hill v. Jones*, 2000 WL 571948, at *3 (6th Cir. May 3, 2000)). While a "battle of the experts" may be appropriate to a medical malpractice case, here Plaintiff's burden is higher. *See Estelle*, 429 U.S. at 106. Even assuming, for the purposes of this motion, that Dr. Stark is correct about what care was appropriate when Defendant Bomber saw Decedent, Plaintiff has failed to show that Defendant Bomber *subjectively* knew of and *subjectively* disregarded an excessive risk to Decedent's health. As the Sixth Circuit has stated, "the standard is not whether there is something

easy that the doctors, with the benefit of hindsight, could have done." *Williams v. Mehra*, 186 F.3d 685, 692 (1999). Therefore, the fact that with the benefit of hindsight Dr. Stark believes Decedent should have been sent to the emergency room is not persuasive to demonstrate that Defendant Bomber disregarded an excessive risk of harm to Decedent.

There is no evidence to show Defendant Bomber "refused to verify underlying facts that he strongly suspected to be true" about Decedent's visit to Defendant Shilling. Plaintiff attempts to argue that Defendant Bomber suggested in his deposition that Defendant Shilling should have sent Decedent to the emergency room immediately. Plaintiff argues that Defendant Bomber is liable for Defendant Shilling's alleged error.

Eighth Amendment liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others." *Gibson*, 926 F.2d at 535. Defendant Bomber cannot be liable for Defendant Shilling's alleged wrongdoing. Further, nothing in the record shows that Defendant Bomber would have had any reason to know of Decedent's visit with Defendant Shilling because the computer system was down. Medical records also show that Decedent failed to mention his visit with Defendant Shilling, or his increased symptoms (Ex. A, Dkt. No. 131-2 at 24). Defendant Bomber cannot be held to have "refused to verify underlying facts he strongly suspected to be true" when he had no reason to suspect the facts to be true in the first place.

Finally, because Decedent received *some* care, Defendant Bomber's conduct must be evaluated under the Sixth Circuit's "grossly inadequate" standard. *Terrance*, 286 F.3d at 844. Plaintiff has failed, however, to present adequate evidence that Defendant Bomber's care would "shock the conscience," nor has Plaintiff presented evidence that a reasonable medical provider

would *not* subjectively think that the care Defendant Bomber provided was lawful. *Id.*; *see also Waldorp*, 871 F.2d at 1034.

Because no evidence exists from which a reasonable jury could return a verdict in favor of Plaintiff with regard to Plaintiff's Eighth Amendment claim against Defendant Bomber, Defendant Bomber's motion is granted with respect to Count I.

    3.    <u>Defendant Edelman</u>

Defendant Edelman argues that summary judgment with regard to Plaintiff's Eighth Amendment claim is warranted because he adequately performed his limited role in treating prison patients. Defendant Edelman responded to the request for a specific type of stress test with an alternative treatment plan within one day. Plaintiff argues that when Defendant Edelman received the request for a stress test, he showed deliberate indifference to Decedent's health and safety by (1) failing to review Decedent's medical records; (2) failing to examine Decedent; and (3) failing to consult Defendant Bomber. Plaintiff's expert, Dr. Stark, testified that although Defendant Edelman's turn-around time was adequate, he had enough information in the request to "reach the conclusion that [Decedent] required immediate emergency room evaluation" (Pl.'s Resp., Dkt. No. 137 at 9).

As with Defendant Bomber "a disagreement between medical personnel over the appropriate course of treatment is insufficient to establish an Eighth Amendment claim." *Runkle*, 2013 WL 2249462, at *5 (citations omitted). Just because Dr. Stark now, with the benefit of hindsight, believes Defendant Edelman should have sent Decedent to the emergency room does not mean that Defendant Edelman violated the Eighth Amendment. Plaintiff has presented no evidence that Defendant Edelman knew of an excessive risk to Decedent's health. As with Defendant Bomber, the care Defendant Edelman provided is evaluated under a "grossly inadequate" standard. *See Terrance*, 286

12

F.3d at 844. At best, Plaintiff has established that Defendant *should have known* of an excessive risk to Decedents health, but such falls short of establishing Eighth Amendment liability. *See Farmer*, 511 U.S. at 837.

Therefore, because no evidence exists from which a reasonable jury could return a verdict in favor of Plaintiff with regard to Plaintiff's Eighth Amendment claim against Defendant Edelman, Defendant Edelman's motion is granted with respect to Count I.

B.  *Defendants Shilling, Freytag, Pope, and Kihm*

Defendants Shilling, Freytag, Pope, and Kihm have moved for summary judgment with respect to Plaintiff's Eighth Amendment claims because none of them evinced a sufficiently culpable state of mind under *Estelle* and *Farmer*. Alternatively, they move for summary judgement on the basis of qualified immunity. Because this motion can be decided solely on the basis of the subjective prong of the *Farmer* test, the objective prong is not discussed, nor will the Court address the merits of Defendants' claims of qualified immunity. For the reasons that follow, Defendants' motion is granted with respect to Plaintiff's Eighth Amendment claims.

Plaintiff asserts that "one of the steps each of the nurses should have taken was to have [Decedent] immediately taken to a hospital for emergency care" (Pl.'s Resp., Dkt. No. 139 at 12). One basis of this claim is Plaintiff's argument that all Defendants disregarded Michigan Department of Correction (MDOC) policies regarding how to respond to chest pain. Plaintiff has submitted photocopies of two policies as evidence. One is a document titled "Emergent and Urgent Heath Care" (Ex. 1, Dkt. No. 139-1). This document divides conditions into three categories: Emergent, Urgent, and Non-emergent (*id.*). "Emergent" needs "are life-threatening illnesses or injuries. Start

lifesaving measures immediately, if indicated, and make sure prisoner is seen by Health Care immediately" (*id.*). Among those listed is chest pain (*id.*).

The second document is "Policy Directive 03.04.100" (Ex. 2, Dkt. No. 139-2). This document defines an "Emergent" condition as a "condition for which delay in treatment may result in death or permanent impairment" (*id.* at ¶ D(1)). The policy directs that when a prisoner complains of an emergent condition, staff must refer the prisoner to a health care provider who has the option of (1) speaking to the prisoner on the phone; (2) seeing the prisoner in the health care unit; or (3) seeing the prisoner at the prisoner's location (*id.* at ¶ CC). Finally, the policy provides that "[p]risoners who require urgent care shall be sent to a local hospital or local emergency clinic if a [qualified health professional] determines necessary services cannot be provided at the facility" (*id.* at ¶ EE).

Plaintiff argues that "a defendant's failure to follow applicable policies or protocols is an important consideration in assessing deliberate indifference" (Pl.'s Resp., Dkt. No. 139 at 15) (citing *Comstock v. McCrary*, 273 F.3d 693, 706-07 (6th Cir. 2001); *Terrance*, 286 F.3d at 844; *Harris v. City of Circleville*, 583 F.3d 356, 369 (6th Cir. 2009)). Assuming *arguendo* that these cases stand for the proposition for which Plaintiff cites them, Plaintiff has failed to show any Defendant failed "to follow applicable policies." Nowhere does the policy state, explicitly or implicitly, that a prisoner with chest pain *must* be sent to the emergency room, particularly if the prisoner is not presently experiencing the pain. If anything, it appears that all Defendants followed the policy by either evaluating Decedent over the phone, or seeing him in the prison health care unit (*see* Ex. 2, Dkt. No. 139-2 at ¶ CC). Plaintiff's argument to the contrary, and assertion that such should be treated as evidence of deliberate indifference, are without merit.

The second basis of Plaintiff's argument that each Defendant should have immediately sent Decedent to the emergency room is the testimony of Dr. Stark. While the admissibility of Dr. Stark's testimony is in controversy,[3] the Court holds — for the reasons that follow — that even if Dr. Stark's testimony is admissible, his opinion that Defendants should have sent Decedent to the emergency room does not create a genuine issue of material fact with regard to each Defendant's alleged deliberate indifference.

1. <u>Defendant Shilling</u>

Defendant Shilling argues that summary judgment with regard to Plaintiff's Eighth Amendment claim is warranted because she provided adequate care by (1) confirming Decedent was not presently in distress over the phone and scheduling an appointment with a doctor as soon as possible on January 18, 2010; and (2) performing a nursing evaluation and placing Decedent on a list to see the doctor the same day for chest pain on January 29.

Plaintiff's expert Dr. Stark testified that on both occasions, Defendant Shilling should have known to send Decedent to the emergency room (Pl.'s Resp., Dkt. No. 139 at 17). Dr. Stark admitted in his deposition that he took issue with Defendant Shilling's medical judgment (Dep. of Stark, Dkt. No. 139-3 at 49). However, "a disagreement between medical personnel over the appropriate course of treatment is insufficient to establish an Eighth Amendment claim." *Runkle*, 2013 WL 2249462, at *5 (citations omitted). Just because Dr. Stark believes Defendant Shilling should have sent Decedent to the emergency room does not mean that Defendant Shilling violated the Eighth

---

[3]Specifically, Defendants argue that he is unqualified as an expert witness under Mich. Comp. Laws § 600.2169(1) (Mot. to Strike, Dkt. No. 145)

Amendment. In sum, no evidence has been presented that the care Defendant Shilling provided was "grossly inadequate." *See Terrance*, 286 F.3d at 844.

Because no evidence exists from which a reasonable jury could return a verdict in favor of Plaintiff with regard to Plaintiff's Eighth Amendment claim against Defendant Shilling, Defendant Shilling's motion is granted with respect to Count I.

2. Defendant Freytag

Defendant Freytag argues that summary judgment with regard to Plaintiff's Eighth Amendment claim is warranted because he attempted to examine Decedent on January 17, but Decent refused examination, and because when Defendant Freytag administered an EKG on January 20, he did not observe anything about Decedent to indicate he was in medical distress.

Plaintiff again argues, on the basis of Dr. Stark's testimony, that Defendant Freytag should have recognized a need for Decedent to go to the emergency room. The analysis of Defendant Freytag's liability under the Eighth Amendment is identical to that of Defendant Shilling. Therefore, because no evidence exists from which a reasonable jury could return a verdict in favor of Plaintiff with regard to Plaintiff's Eighth Amendment claim against Defendant Freytag, Defendant Freytag's motion is granted with respect to Count I.

3. Defendant Pope

Defendant Pope argues that summary judgment with regard to Plaintiff's Eighth Amendment claim is warranted because she conducted a nursing evaluation of Decedent after he complained of having had chest pain an hour before and because she consulted with an on-call doctor, who did not advise her to send Decedent to the emergency room. Plaintiff counters, again based on the testimony of Dr. Stark, that notwithstanding the supervising prison doctor's order, Defendant Pope should have

immediately recognized that Decedent was displaying "classic symptoms of a heart attack" (Pl.'s Resp. at 20) and sent Decedent to the emergency room. The analysis of Defendant Pope's liability under the Eighth Amendment is identical to that of Defendant Shilling. Therefore, because no evidence exists from which a reasonable jury could return a verdict in favor of Plaintiff with regard to Plaintiff's Eighth Amendment claim against Defendant Pope, Defendant Pope's motion is granted with respect to Count I.

    4.    Defendant Kihm

Defendant Kihm argues that summary judgment with regard to Plaintiff's Eighth Amendment claim is warranted because (1) Defendant Kihm made every effort, along with Defendant Bomber, to schedule Decedent's stress test as soon as he learned it had been unfulfilled on January 27; and (2) the only other time Defendant Kihm saw Decedent, Decedent was being evaluated by another nurse on January 28. Decedent appeared not to be in distress when Defendant Kihm saw him. Plaintiff argues that Defendant Kihm's extra effort in scheduling the stress test demonstrates that Defendant Kihm understood the seriousness of Decedent's medical condition. Therefore, Plaintiff argues, the fact that Defendant Kihm did not send Decedent immediately to the emergency room evinces a deliberate indifference to Decedents serious medical need.

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Defendant Kihm acted reasonably when he conferred with Defendant Bomber to schedule Decedent's stress test. Defendant Kihm also acted reasonably when observing an inmate, who appeared not to be in distress, being examined by another nurse, did not insist that inmate be sent to the emergency room.

Based on the evidence presented, no reasonable jury could return a verdict in favor of Plaintiff with regard to Plaintiff's Eighth Amendment claim against Defendant Kihm. Therefore, Defendant Kim's motion is granted with respect to Count I.

## IV. STATE-LAW MEDICAL MALPRACTICE CLAIMS

In Count VI of the Second Amended Complaint, Plaintiff states claims for medical malpractice against Defendants Bomber, Edelman, Freytag, Shilling, Pope, and Kihm. Defendants Freytag, Shilling, Pope, and Kihm argue they are immune from malpractice claims under Michigan's Governmental Tort Liability Act. Mich. Comp. Laws § 691.1407(2). Defendants Bomber and Edelman argue that they are not liable for malpractice, and in the alternative, ask the Court to decline to exercise supplemental jurisdiction over the state-law claims.

"Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). There is no reason in this case to depart from the general rule. Without evaluating the merits of Plaintff's claims, the Court sees no reason to exercise its supplemental jurisdiction when forums more familiar with Michigan medical malpractice law are available to Plaintiff. Count VI of the Second Amended Complaint is therefore dismissed without prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendants PHS, Bomber, and Edelman's Motion for Summary Judgment is granted-in-part with respect to Counts I and V and denied-as-moot-in-part with respect to Count VI; Defendant Freytag, Shilling, Pope, and Kihm's Motion for Summary Judgment is

granted-in-part with respect to Count I and denied-in-part-as-moot with respect to Count VI. The remaining pendant state-law claim (Count VI) is dismissed without prejudice. Because all pending claims are dismissed, the Court also denies-as-moot Defendants PHS, Bomber, and Edelman's Motion to Strike and Motion for Leave to File a Reply.

The Court will issue an Order and Judgment consistent with this Opinion.


Dated: September 10, 2013                             /s/ Robert Holmes Bell
                                                     ROBERT HOLMES BELL
                                                     UNITED STATES DISTRICT JUDGE